UNITED STATES OF AMERICA
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,                        Case No. 1:08-CR-142-01

v.                                    Honorable Robert J. Jonker
                                    United States District Judge

JULIO MENDEZ-AGUILAR

               Defendant.
_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

On August 7, 2008, Julio Mendez-Aguilar pleaded guilty to transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). This Honorable Court will sentence Mr. Mendez-Aguilar on November 7, 2008. A Presentence Investigation Report (PSIR) has been prepared and disclosed to the parties. There are no outstanding objections. The recommended sentencing guideline range is 15 to 21 months, based on a total offense level of 14 and a criminal history category of I. Mr. Mendez-Aguilar respectfully submits this sentencing memorandum for the Court's consideration prior to sentencing.

**18 U.S.C. § 3553(a) Factors**

In compliance with *United States  v. Booker*, 543 U.S. 220 (2005), the Court is directed to give due consideration to many factors in determining a proper sentence. Under 18 U.S.C. § 3553(a), the Court must impose a sentence sufficient, but <u>not</u> greater than necessary, to accomplish the purposes of sentencing. These purposes are set forth in the statute. No single factor has primacy but it is not unreasonable to view the factors in the order presented by the legislature as a directive,

a decision tree, as it were, in determining what is a "sufficient" sentence. It would further appear that under the clarifying cases of *Gall v. United States,* 552 U.S. ___, 128 S. Ct. 586 (2007), and *Kimbrough v. United States,* 552 U.S. ___, 128 S. Ct. 558 (2007), the Court is advised to begin with the advisory sentencing guideline calculation, consider 18 U.S.C. § 3553(a), and consider the sentencing positions of the parties. Counsel will now expound on the § 3553(a) factors as they relate to Mr. Mendez-Aguilar's case.

1.      **Nature and circumstances of the offense and the history and characteristics of the defendant.**

Mr. Mendez-Aguilar came to this country illegally from his home in the State of Guerrero on Mexico's west coast. He grew up in poverty of a nature that is almost unknown in this country. He has a second-grade education and has spent his adult life working as an agricultural laborer. Mr. Mendez-Aguilar came to this country in search of a better life, a life that most Americans would consider quite impoverished and inadequate, but which Mr. Mendez-Aguilar craved—a life of having a roof over one's head and some sort of nourishment on a fairly regular basis, money to send home to impoverished parents, and adequate clothing and personal "essentials."

Despite being twenty-five years old and in federal custody for a felony offense, Mr. Mendez-Aguilar had no criminal history prior to the instant offense. This lack of history is striking compared to most offenders in the federal system. Mr. Mendez-Aguilar has one driving conviction for not having a license, which is related to the instant offense. He has one arrest for driving without a license, but no conviction for this offense. Mr. Mendez-Aguilar has not been deported previously.

On May 9, 2008, Mr. Mendez-Aguilar had his first real encounter with the law. He was stopped on I-196 in Allegan County, Michigan, for speeding and having an obstructed registration

2

plate on the pickup truck he was driving.  Mr. Mendez-Aguilar did not have a driver's license or identification on his person.  The police subsequently searched the cab and bed of the pickup and found seventeen illegal aliens.  Mr. Mendez-Aguilar was aware that these passengers had come to this country illegally through Mexico.  He had picked them up in Phoenix, Arizona, and had driven them to Michigan as a favor for an acquaintance.  Mr. Mendez-Aguilar did not own the truck; rather, it belonged to a man he knows in Florida.  This conduct constitutes his offense.

2. **Need for sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other corrective treatment in the most effective manner**.

Mr. Mendez-Aguilar has expressed remorse for his conduct.  He has asked the Court to forgive what he knows were illegal and ill advised actions.  After being deported, Mr. Mendez-Aguilar will not be in a position to commit further crimes in this country, so the public will be protected.  His parents back in Mexico, his new found knowledge of the American penal system, the risks and costs of returning to this country, and the threat of another prosecution will all keep Mr. Mendez-Aguilar in Mexico.  Any time in federal custody is daunting and no one hearing of a sentence of the guideline length (or even a shorter sentence) for a first-time offender will doubt the serious nature of this offense or the grave consequences of such conduct.  Mr. Mendez-Aguilar does not have any specific needs the Bureau of Prisons will address with programming.  His status as an illegal alien slated for deportation severely curtails the programming available to him.

3. **The Advisory Sentencing Guideline Range.**

The advisory guideline range set forth in the PSIR is 15 to 21 months based on an offense level of 14 and a criminal history category of I.

**4.      Need to avoid unwarranted sentencing disparities.**

This Court sentenced Mr. Mendez-Aguilar's co-defendant, Mr. Hector Marcario-Sarat, to five months custody and two years of supervised release on September 30, 2008.  Mr. Marcario-Sarat was considered by the PSIR writer to have had a minor role in the offense.

**5.      Restitution.**

Restitution does not appear to be an issue in this case.  It is worth noting that the victims of this offense, the United States government and the taxpayers, will bear the burden of paying to incarcerate Mr. Mendez-Aguilar as he serves his time.

**CONCLUSION**

Mr. Mendez-Aguilar respectfully requests that this Honorable Court consider his contrition, his inevitable deportation back to Mexico, his lack of criminal history, and his lack of criminal motivation in determining a sentence that is sufficient, but not greater than necessary, to serve the § 3553(a) purposes of sentencing.

Respectfully submitted,

RAY KENT
Federal Public Defender

/s/Sean R. Tilton
Assistant Federal Public Defender
The Trade Center
50 Louis NW, Suite 500
Grand Rapids, Michigan 49503
Dated: October 31, 2008                (616) 742-7420